UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TREVOR BROWN | No. 17 CR 572<br><br>Judge Charles R. Norgle |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

The government submits this position paper as to the factors applicable for the sentencing of defendant TREVOR BROWN. The defendant has pled guilty to willfully transferring a firearm to an out-of-state resident without a federal firearms license. The government respectfully submits that a sentence within the applicable Guidelines range of 10 to 16 months is appropriate and warranted. In light of defendant's serious criminal conduct and defendant's specific history and characteristics, the principles of sentencing set forth in 18 U.S.C. § 3553(a) call for a period of incarceration within the guidelines range.

I.    **Background of the Case and the Offense Conduct**[1]

Defendant is a life-long resident of Indiana. Between April 22, 2016 and July 11, 2016, defendant purchased three guns from two different gun stores in Indiana. Defendant bought the first gun, a .40 caliber Ruger pistol, on April 22, 2016 for

---

[1] The information contained in this section is based on the Presentence Investigation Report ("PSR"), which contains the Government's Version of the Offense ("GVO"), and the criminal complaint affidavit filed in this case. At sentencing, the district court may rely upon information contained in a PSR so long as the information is well-supported and appears reliable. *See United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004).

1

personal use. Sometime in June 2016, defendant's friend, Individual B, told defendant that he knew people in Chicago who would purchase guns for two to three times more than what defendant paid to purchase the guns from a gun store. Knowing this, defendant purchased a second gun, a 9 millimeter Sccy Industries gun, from a second gun store in Indiana on July 8, 2016. Three days later, defendant purchased a third gun, a .380 caliber Cobra Enterprise, from the second gun store. When defendant purchased the Sccy Industries and Cobra Enterprises pistols, he had no intention of keeping these guns for himself. Rather, he fully intended to resell them to others in Chicago for money.

On July 15, 2016, defendant traveled from Indiana to Chicago with his newly bought Ruger, Sccy, and Cobra pistols. The next day, in Chicago, defendant sold these three firearms to Individual A for $2,200 in cash. Defendant's friend, Individual B, kept $500 of the transaction as his cut for the transaction. At the time that defendant sold these guns to Individual A, he knew or had reasonable cause to believe that Individual A was a resident of Illinois. After selling these guns to Individual A, defendant left Chicago and returned to Indiana.

Two of the firearms that defendant brought to and sold in Chicago were recovered by the Chicago Police Department shortly after he sold them to Individual A. Specifically, officers recovered the Sccy Industries pistol from the scene of a drive-by shooting that occurred on July 20, 2016. The pistol was recovered from an abandoned vehicle that had crashed in the middle of the street after the shooting.

2

This shooting occurred just four days after defendant transported and sold the Sccy Industries pistol in Chicago to Individual A.

Officers recovered the Cobra pistol on August 14, 2016, after a concerned citizen found the gun inside his grill and called officers to retrieve it. When officers recovered this gun, it was loaded with a bullet in the chamber. Officers recovered this gun approximately one-and-a-half miles from the location of the July 20, 2016 shooting.

## II. Guidelines Calculation and Sentencing Range

### A. Offense Level Calculation and Criminal History Calculation

As a matter of process, the Court must properly calculate the Guidelines range, treat the Guidelines as advisory, consider the Section 3553(a) factors, and adequately explain the chosen sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007).

The government has no objections to the PSR and agrees with the offense level calculations and defendant's criminal history category as set forth in the PSR. PSR ¶¶ 18-20, 33.[2] Pursuant to Guideline § 2K2.1(a)(7), the base offense level is 12. PSR ¶ 18. Pursuant to Guideline § 2K2.1(b)(1)(A), the offense level is increased by two levels because the present offense involved three firearms. Defendant is in Criminal History Category I. PSR ¶ 33.

---

[2] The plea agreement assigned defendant zero criminal history points. The PSR notes a delinquency adjudication and assigned one criminal history point to this adjudication. This does not change defendant's criminal history category or his Guidelines range.

3

### B. Guidelines Range

When considering timely acceptance of responsibility, PSR ¶ 26, defendant's adjusted offense level is 12. When that offense level is considered with his placement in Criminal History Category I, defendant's advisory Guidelines range is 10 to 16 months' imprisonment. PSR ¶ 70.

### III. Application of the Sentencing Factors Warrants a Guidelines Range Sentence.

A guidelines range sentence is reasonable and appropriate in this case because the § 3553(a) factors weigh in favor of such a sentence. In determining sentences to impose, courts consider, among other factors, the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. §3553(a)(1).[3]

There are several § 3553(a) factors that support a guidelines range sentence for this defendant, including: (1) his history and personal characteristics, (2) the seriousness of the offense, (3) the need to provide just punishment for the offense and adequate deterrence, and (4) to protect the public from further crimes of the defendant. A guidelines range sentence adequately addresses these factors and appropriately provides a just sentence for this defendant.

---

[3] Courts also must consider the need for the sentence to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D); *see also e.g., United States v. Vallar*, 635 F.3d 271, 278 (7th Cir. 2011). Section 3553(a) also requires the court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.

### A. History and Characteristics of the Defendant

Defendant is 23 years old. PSR ¶ 38. He was born, and prior to the events charged in this case, lived in Indiana. PSR ¶¶ 38, 46. While defendant did not know his father growing up, he had a "great" childhood where his mother raised him and his half-sister. PSR ¶¶ 38, 41. Defendant's mother worked to support her children, and defendant was never without a home or other necessities. PSR ¶ 41. Defendant has two young children with his fiancé, with whom he has been in a relationship for approximately six years. PSR ¶ 44-46. Defendant reported to Probation gainful and continuous employment since February 2016.[4] PSR ¶ 60. Also notable in defendant's background is that defendant joined the Army Reserve in September 2013 and was honorably discharged from service in February 2014. PSR ¶ 64. The Court can further consider defendant's Criminal History Category of I in determining an appropriate sentence. PSR ¶¶ 31-34, 36.

On the one hand, these above characteristics are mitigating factors that the Court should consider in imposing sentence. On the other hand, the Court should also weigh that what these characteristics demonstrate is that unlike many defendants who resort to this type of criminal activity due to difficult upbringings, lack of a support system, or physical or substance abuse, defendant experienced none of those things, and thus had the opportunity to ldead a productive life. Despite this opportunity, defendant nevertheless chose to engage in criminal activity that resulted

---

[4] Probation noted that it had received copies of paychecks for two pay periods: October 13, 2018 and January 15, 2019.

5

in firearms being illegally brought to the City of Chicago, potentially endangering innocent people.

### B. Seriousness of the Offense

When defendant bought the Sccy Industry and Cobra pistols, he never intended to use those pistols for his own purposes. Instead, the sole reason defendant bought those firearms was to sell them in Chicago for profit. When defendant purchased those pistols, he knew that it was for an improper purpose. Yet, he falsely certified on two ATF Form 4473s that the guns were for himself. After making these false certifications, defendant then transported the two firearms that he bought and the one he bought for himself to the City of Chicago, a city that has been inundated with violence as a result of individuals who use unregistered and underground-market firearms to commit crimes. Defendant chose to increase the number of unregistered firearms in the city by bringing them from Indiana.

In fact, two of the firearms that defendant sold in Chicago were recovered by Chicago police officers shortly after he illegally transported them to Chicago. One was recovered from a violent incident—a drive-by shooting where an individual was shot—four days after defendant's sale. The second pistol, which was loaded when it was recovered, was found inside a citizen's grill. This pistol was found less than a month after defendant's sale of it. The potential for danger had this gun been recovered by someone else with ill-motives was high.

In addition, the Court should further consider that in addition to selling these firearms, defendant communicated with others about acting as a broker for other

6

firearms sales. Facebook records show this, and defendant admitted to this conduct during his recorded interview with agents.[5]

### C. The Need for Defendant's Sentence to Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public from Future Crimes by this Defendant

There can be no question that defendant knew that he was not allowed to purchase firearms for others, much less re-sell those firearms in a city plagued by violence. Defendant's actions, while admittedly out of character given his history, show disrespect for the law, and his offense requires a sentence that reflects the seriousness of this offense. The government's proposed sentence will help promote respect for the law, while providing a just punishment for defendant's current crime.

As to deterrence, the sentence imposed in this case must deter others from this type of conduct: straw-purchasing firearms in Indiana only to distribute them to individuals in Chicago. As to specific deterrence, for defendant's first felony conviction, a guidelines range sentence is necessary in order for defendant to understand that an offense such as this is one that comes with serious consequences.

## IV. Supervised Release

> Under 18 U.S.C. § 3583(d), a sentencing court has discretion to impose appropriate conditions of supervised release, to the extent that such conditions (1) are reasonably related to factors identified in § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a); and (3) are consistent with the policy statements issued by the Sentencing Commission. Policies emphasized by the Sentencing

---

[5] The Facebook records and defendant's recorded interview were produced to defendant in discovery.

Commission include deterrence rehabilitation, and protecting the public.

*United States v. Armour*, 804 F.3d 859, 867 (7th Cir. 2015) (internal quotation marks omitted). In *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), the Seventh Circuit held that sentencing courts must make an independent determination that each condition of supervised release imposed on a defendant is rationally and reasonably related to the offense conduct and characteristics, and to the sentencing purposes identified by 18 U.S.C. §§ 3583(c) and 3553(a)(1), (a)(2)(C), and (a)(2)(D). *Thompson*, 777 F.3d at 374-76. Additionally, the Court must state the reasons for imposing each condition, and ensure each condition is not broader than necessary to achieve the purposes of sentencing. *Id*.

Consistent with these principles, the government requests that the Court impose the following conditions on the basis that they are reasonable and appropriate to deter defendant from returning to criminal conduct and will help to ensure that defendant receives appropriate support following his prison term.

### A. Mandatory Conditions Pursuant to 18 U.S.C. Section 3583(d)

The government requests that defendant be required to comply with the following mandatory conditions of supervised release pursuant to 18 U.S.C. § 3583(d), and Guideline § 5D1.3(a), PSR at 15:

- **Condition No. 1:** Defendant shall not commit another federal, state, or local crime.

- **Condition No. 2**: Defendant shall not unlawfully possess a controlled substance.

- **Condition No. 5:** Defendant shall cooperate in the collection of a DNA sample if such a sample is required by law.

- **Condition No. 6:** Defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release, and at least two periodic tests, up to a maximum of 104 tests thereafter, for use of a controlled substance during each year of supervised release.

Condition No. 6 is reasonable and appropriate given defendant's admitted prior use of marijuana. PSR ¶ 54.

### B. Discretionary Conditions Pursuant to 18 U.S.C. §§ 3563(b) and 3583(d)

The government further requests that the Court impose the following discretionary conditions pursuant to 18 U.S.C. §§ 3563(b) and 3583(d) and Guideline § 5D1.3(c) on the basis that they are appropriate and necessary to promote defendant's respect for the law and deter him from committing future crimes. PSR at 15-18. These conditions serve to support defendant's reintegration into society and serve to promote deterrence and protect the public, and are appropriate in this case in light of defendant's personal characteristics:

- **Condition No. 1**: Defendant shall provide financial support to any dependents if financially able.

- **Condition No. 4**: Defendant shall seek, and work conscientiously at, lawful employment or pursue conscientiously a course of study or vocational training that will equip him for employment.

- **Condition No. 6**: Defendant shall refrain from knowingly meeting or communicating with any person he knows to be engaged, or planning to be engaged, in criminal activity.

- **Condition No. 7**: Defendant shall refrain from any use of alcohol or any use of a narcotic drug or other controlled substance.

- **Condition No. 8:** Defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon.

- **Condition No. 14**: Defendant shall not knowingly leave the federal judicial district where he or she is authorized to reside without first getting permission from the court or the probation officer.[6]

- **Condition No. 15**: Defendant shall report to a probation officer as directed by the court or a probation officer.

- **Condition No. 16**: Defendant shall permit a probation officer to visit him at any reasonable time at home, at work, at school, at community service location, or other reasonable location specified by the probation officer, and permit confiscation of any contraband observed in plain view of the probation officer.

- **Condition No. 17:** Defendant shall notify a probation officer promptly, within 72 hours, of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer.

- **Condition No. 18**: Defendant shall notify a probation officer promptly, within 72 hours, if arrested, or questioned by a law enforcement officer.

## C. Special Conditions Pursuant to 18 U.S.C. § 3563(b)(22) and § 3583(d)

Finally, the government respectfully requests that defendant be ordered to comply with the following special conditions permitted by § 3583(d), which further supports defendant's reintegration into society. PSR at 18-21.

- **Condition No. 3**: Defendant shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least 20 hours of community service

---

[6] The government requests this modification to Condition No. 14. This modification is consistent with Guideline § 5B1.3(c)(3), and further consistent with Seventh Circuit decisions. *See United States v. Dickson*, 849 F.3d 686, 690-91 (7th Cir. 2017); *United States v. Ortiz*, 817 F.3d 553, 555 (7th Cir. 2016); *United States v. Kappes*, 782 F.3d 828, 848 (7h Cir. 2015).

per week at the direction of the U.S. Probation Office until gainfully employed. The amount of community service shall not exceed 200 hours.

- **Condition No. 11**: Defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

**V.    Conclusion**

For the foregoing reasons, the government respectfully requests that the Court impose a sentence within the applicable guidelines range, and order a period of supervised release consistent with the goals of criminal punishment.

Date:  February 28, 2019					Respectfully Submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:	*/s/ Sheri L. Wong*
SHERI L. WONG
Assistant U.S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 697-4069